IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civ. Action No. 5:22-cv-00437-BO-RN

| | |
|---|---|
| LABORATORY CORPORATION OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ASL-DEN, LLC f/k/a APP-UNIPATH, LLC d/b/a UNIPATH; and ATHANASSIOS PAPAIOANU, <br><br> Defendants. | **STIPULATED ORDER GRANTING PERMANENT INJUNCTION** |

Plaintiff, Laboratory Corporation of America ("Labcorp") and Defendants ASL-DEN, LLC f/k/a/ APP-UniPath, LLC d/b/a UniPath ("ASL") and Athanassios Papaioanu ("Papaioanu") (collectively, "Defendants"), have resolved their disputes in this action pursuant to the terms of a settlement agreement dated February 5, 2024. As part of their agreed resolution of this action, the Parties have agreed to a permanent injunction subject to the approval of the Court.

The Court, noting the agreement of the parties as evidenced by the signatures of the parties and their counsel on the Joint Motion for Entry of Agreed Order Granting Permanent Injunction, determines that this Stipulated Order Granting Permanent Injunction should be entered for the reasons set forth below.

## FINDINGS OF FACT

The Court hereby makes the following findings of fact, to which each of the parties has stipulated:

1

A.  **The Parties.**

1. Plaintiff Labcorp is a corporation formed and organized under the laws of the State of Delaware with its principal place of business in Burlington, North Carolina.

2. Defendant ASL is a limited liability company formed and organized under the laws of the State of Colorado with its principal place of business in Nashville, Tennessee.

3. Defendant Papaioanu is a citizen and resident of Nashville, Tennessee.

4. ASL, when it was previously named "APP-Unipath, LLC," was a subsidiary of non-party American Pathology Partners, Inc. ("AP2").

5. Since 2019, Papaioanu has served as an officer of ASL.

6. Prior to September 30, 2023, ASL operated a laboratory located at 6116 E. Warren Avenue in Denver, Colorado, 80222 ("Denver Lab").

B.  **Labcorp, ASL, and other Entities Enter the Purchase Agreement.**

7. On or about October 19, 2020, Labcorp, AP2, ASL, and nine other subsidiaries of AP2 entered into an asset purchase agreement for Labcorp to acquire some of the assets of AP2, ASL, and the other subsidiaries ("Purchase Agreement").

8. The Purchase Agreement designated AP2, ASL, and nine other entities operating laboratories as "Seller."

9. Prior to the Purchase Agreement's closing date, the parties thereto executed an Amended Purchase Agreement on or about February 1, 2021 ("Amended Purchase Agreement"), reflecting, among other things, a purchase price adjustment.

10. Except as noted therein, the Amended Purchase Agreement did not alter the Purchase Agreement's terms.

11. Pursuant to the Purchase Agreement, AP2 and ASL agreed to sell and Labcorp agreed to purchase "selected operating assets of Seller that are used or held for use in connection

2

with Seller's clinical and anatomic pathology laboratory services business based in the States of Colorado and Texas, with customers in additional States (the "Business")."

12. Under Section 2.1 of the Purchase Agreement, AP2 and UniPath agreed to "transfer, assign, convey and deliver" to Labcorp "all of the assets and properties of Seller constituting the Business, other than the Excluded Assets (collectively referred to herein as the "Purchased Assets")."

13. Section 2.2 of the Purchase Agreement lists the "Excluded Assets" that Labcorp was not purchasing from Seller, including the assets identified in Schedule 2.2 to the Purchase Agreement.

14. Schedule 2.2 to the Purchase Agreement includes as Excluded Assets, *inter alia*, certain office and laboratory equipment for the Denver Lab as well as the Denver Lab's certification issued by the Center for Medicare and Medicaid Services under the Clinical Laboratory Improvement Amendments ("CLIA certification").

15. Section 2.2 of the Purchase Agreement permitted Seller to use the Colorado CLIA certification for the Denver Lab (which the Purchase Agreement designated as the "Facility") "for up to one hundred twenty (120) days after the Closing Date ("CLIA Transition Period") solely for the purpose of transitioning Seller's current customers serviced at the Facility to a new facility not in the 'territory' as such term is defined in and covered by any of the Restrictive Covenant Agreements (individually and collectively, the "RCA Territory")."

16. Section 2.2 of the Purchase Agreement specified that Seller was not permitted to use "any business name at or in connection with the Facility, including signage on the building" during the CLIA Transition Period.

3

17. The Seller further agreed in Section 7.15 of the Purchase Agreement that after the Closing, Seller would (a) not commercially use the name UniPath or any variation, name, derivatives from or form thereof of or any other names used by the Business, or any trademarks or service marks associated therewith and (b) "take all necessary action to effect a change of name of Seller Parties to names other than those listed in this Section 7.15 or any derivations thereof as of the Closing Date."

18. Seller acknowledged and agreed that Labcorp would suffer irreparable injury if Seller breached Section 7.15 of the Purchase Agreement and that Labcorp would be entitled to an injunction restraining Seller from breaching that provision.

19. Section 8.9(f) of the Purchase Agreement obligated Seller to deliver to Labcorp certain Restrictive Covenant Agreements that were attached to the Purchase Agreement as Exhibit 8.9(f).

20. Papaioanu and ASL were two of the parties obligated to execute a Restrictive Covenant Agreement in connection with the Purchase Agreement.

21. Section 12.9 of the Purchase Agreement and Section 6 of the Amended Purchase Agreement each state that they "shall be governed by and construed in accordance with the internal laws of the State of Delaware, without regard to conflicts-of-law principles that would require application of any other law."

22. Section 12.10 of the Purchase Agreement states that each seller party agrees that any lawsuit "in connection with or relating to" the Purchase Agreement "shall be brought in a court of competent jurisdiction located in Raleigh, North Carolina." It also states that the parties to the Purchase Agreement "shall consent and submit to personal jurisdiction in any such court" in Raleigh, North Carolina.

4

### C. ASL and Papaioanu Executed Restrictive Covenant Agreements.

23. On or about February 15, 2021, each of Papaioanu and ASL executed a Restrictive Covenant Agreement with Labcorp.

24. The Restrictive Covenant Agreements designate each of Papaioanu and ASL as "Counterparty."

25. Section 3 of the Restrictive Covenant Agreements contain identical non-solicitation provisions that prohibit Papaioanu and ASL, during the five-year period from February 15, 2021 to February 15, 2026 ("Restricted Period"), from influencing or attempting to influence any (1) customer of Labcorp or the Business "to divert such customer's purchases of services associated with the Business to any Person, firm, corporation, institution, or other entity then in competition with [Labcorp] or its Subsidiaries or Affiliates;" or (2) "employee of [Labcorp] or its Subsidiaries or Affiliates, either directly or indirectly, to terminate his or her employment with [Labcorp] or any of its Subsidiaries or Affiliates."

26. Section 2 of the Restrictive Covenant Agreements also contain non-competition provisions that restrict Papaioanu's and ASL's conduct in the "Territory," which is defined in Section 4 of those agreements to mean Texas, Colorado, Louisiana, and Wyoming.

27. The non-competition provisions of the Restrictive Covenant Agreements forbid Papaioanu or ASL to "(a) engage, directly or indirectly, in a business that competes with the Business within the Territory … , or (b) provide information to, solicit or sell for, organize or own any interest in, or become employed by or engaged by, or act as agent for, any Person that is directly or indirectly engaged in a business in the Territory which is substantially similar to or competes with the Business," except for "holding (solely as a passive investment) not more than five percent (5%) of the outstanding shares of any publicly held company which may be so engaged in a trade or business substantially similar to or competes with the Business."

5

92655635.1

Case 5:22-cv-00437-BO-RN   Document 43   Filed 03/04/24   Page 5 of 12

28. Section 2 of Papaioanu's Restrictive Covenant Agreement explicitly provides that it does not prohibit him from "[1] working for a division, entity, or subgroup of a company that engages in the Business so long as such division, entity, or subgroup does not directly or indirectly engage in the Business; [2] owning, working for, providing services in, contracting with or consulting with a hospital or a health system, including working as a pathologist in a hospital or health system, and is not competitive with [Labcorp]'s business and is not involved in such group … growing this business; [3] owning, providing services to, contracting with or consulting with an entity that owns its own laboratory where such laboratory does not provide external services; or [4] providing COVID PCR/RPP testing outside the Territory."

29. In Section 7 of the Restrictive Covenant Agreements, Papaioanu and ASL agreed that the non-competition, non-solicitation, and confidentiality provisions in each Restrictive Covenant Agreement would remain in effect for the Restricted Period.

30. By executing each of their Restrictive Covenant Agreements, Papaioanu and ASL each acknowledged that:

   a. "the restrictions contained in this [Restrictive Covenant] Agreement are reasonable and necessary to protect the legitimate interests of [Labcorp] and that [Labcorp] would not have entered into the Purchase Agreement in the absence of such restrictions"; and

   b. "any breach by Counterparty of this [Restrictive Covenant] Agreement will cause continuing and irreparable harm to [Labcorp] for which monetary damages would not be an adequate remedy."

31. Papaioanu and ASL also agreed in Section 7(a) of their respective Restrictive Covenant Agreements that, in the event of a breach, "[Labcorp] shall have the right to enforce the

provisions of this [Restrictive Covenant] Agreement by seeking injunctive or other relief in any court, without a requirement that a bond be posted, and this [Restrictive Covenant] Agreement shall not in any way limit remedies of law or in equity otherwise available to [Labcorp]."

32. Papaioanu and ASL further agreed in Section 7(b) of their respective Restrictive Covenant Agreements that "[i]n the event that Counterparty breaches any of the Restrictive Covenants in this Agreement, then the Restricted Period shall be extended for a period of time equal to the period of time during which such breach occurs, and, in the event that Purchaser is required to seek relief from such breach in any court, board of arbitration or other tribunal, then the Restricted Period shall be extended for the period of time required for the pendency of such proceedings, including all appeals."

33. The Restrictive Covenant Agreements rely on the Purchase Agreement's definition of "Business" as "Seller's clinical and anatomic pathology laboratory services business based in the States of Colorado and Texas, with customers in additional States."

34. Section 9(c) of the Restrictive Covenant Agreements dictate that they "shall be construed and enforced in accordance with the substantive laws of the State of Delaware without regard to the principles of conflicts of laws of any jurisdiction."

35. The Restrictive Covenant Agreements do not include a provision addressing venue for a dispute arising out of the Restrictive Covenant Agreements.

### D. The Parties Close on the Purchase Agreement

36. On or about February 15, 2021, Labcorp, AP2, ASL, and nine other subsidiaries of AP2 closed on the Purchase Agreement.

37. Labcorp contends that, at closing, Labcorp paid the amounts owed to the Seller under the Purchase Agreement.

7

92655635.1

Case 5:22-cv-00437-BO-RN   Document 43   Filed 03/04/24   Page 7 of 12

38. At closing, the Seller executed a General Assignment and Bill of Sale through which it granted, sold, assigned, released, conveyed, transferred, set over and confirmed unto Labcorp the assets purchased pursuant to the Purchase Agreement.

39. Under Section 5.23(11) of the Disclosure Schedule, Papaioanu and other listed individuals would receive a transaction bonus payment from AP2 upon the closing of the Purchase Agreement. Papaioanu has received that transaction bonus contemplated in Section 5.23(11) of the Disclosure Schedule.

### E. The Parties' Dispute

40. After the Closing Date, a dispute arose among the parties to this litigation.

41. ASL operated the Denver Lab following the CLIA Transition Period in a manner that Labcorp believed violated the Purchase Agreement and Papaioanu's and ASL's Restrictive Covenant Agreements because Labcorp believed that, within the Territory, the Denver Lab was performing services that compete with the Business and ASL and Papaioanu were soliciting and recruiting laboratory staff.

42. ASL and Papaioanu deny that the continued operation of the Denver Lab violated the Purchase Agreement, their Restrictive Covenant Agreements, or any other obligations to Labcorp, contractually or otherwise.

43. Labcorp has alleged that ASL continued to display the UniPath name in certain physical and online locations.

44. ASL denies that it displayed the UniPath name in any manner that violated the Purchase Agreement or any other law.

45. After the parties, through counsel, exchanged correspondence regarding the dispute, Labcorp filed this litigation in which it asserts claims against ASL for breach of the

Purchase Agreement and against ASL and Papaioanu for breach of the Restrictive Covenant Agreements, violations of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and violations of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1.

46. ASL and Papaioanu deny Labcorp's allegations in this matter.

47. As of September 30, 2023, ASL and Papaioanu have closed the Denver Lab and moved all of the Denver Lab's operations to Tennessee.

48. ASL and Papaioanu are not using or displaying the UniPath name.

49. Neither ASL nor Papaioanu have any intent to resume laboratory operations in Colorado in the next five (5) years or to use or display in the future the UniPath name.

50. In light of the changed circumstances, the parties have reached an agreement that will resolve this litigation, which includes the parties' agreement to entry of this Stipulated Permanent Injunction as shown by the parties' signatures on the joint motion requesting that the Court enter the Stipulated Permanent Injunction.

51. To effectuate their settlement, the parties request that the Court enter this Stipulated Permanent Injunction, after which Labcorp will dismiss its claims, with the Court having jurisdiction over this action for the purposes of enforcing the permanent injunction, if necessary.

## CONCLUSIONS OF LAW

Based on the foregoing, the Court concludes:

52. For purposes of entry and enforcement of this permanent injunction only and without prejudice to Defendants' arguments to the contrary, this Court finds that it has matter jurisdiction over this action and personal jurisdiction over Defendants.

53. A party seeking permanent injunction relief must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are

9

92655635.1

Case 5:22-cv-00437-BO-RN   Document 43   Filed 03/04/24   Page 9 of 12

inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

54. For purposes of entry and enforcement of this permanent injunction only and without prejudice to Defendants' arguments to the contrary, this Court finds as follows:

   a. Labcorp has suffered and would suffer irreparable harm from any future breaches of the Purchase Agreement and Restrictive Covenant Agreements by Defendants.

   b. Legal remedies would be inadequate to compensate Labcorp for its injuries, which are inherently difficult to quantify.

   c. Considering the balance of the hardships between Plaintiff and Defendants, particularly in light of the fact that Defendants have ceased operations in Colorado and have no intent to resume such operations in the next five (5) years, the Court concludes that an equitable remedy is warranted.

   d. The public interest would not be harmed by entry of this permanent injunction.

## STIPULATED PERMANENT INJUNCTION

THEREFORE, pursuant to Rule 65 of the Federal Rules of Civil Procedure, which provides that an order granting an injunction binds the parties, their officers, agents, servants, employees, and attorneys, and any person in active concert or participation with the parties or their officers, agents, servants, employees, and attorneys who receive actual notice of this order, Fed. R. Civ. P. 65(d)(2), it is ORDERED that:

1. ASL and the persons bound pursuant to Rule 65(d)(2) are hereby enjoined and restrained, from using or displaying the UniPath name as required by the Purchase Agreement; and

10

92655635.1

Case 5:22-cv-00437-BO-RN   Document 43   Filed 03/04/24   Page 10 of 12

2. For a period of five years running from October 1, 2023 through October 1, 2028, ASL, Papaioanu, and all other persons bound pursuant to Rule 65(d)(2) are hereby enjoined and shall not, in Colorado, do any of the following either directly or indirectly:

    a. influence or attempt to influence any customer of Labcorp or the Business (meaning the clinical and anatomic pathology laboratory services with customers in additional states but that was based in the State of Colorado that was sold to Labcorp under the Purchase Agreement) to divert such customer's purchases of services associated with the Business to any person then in competition with Labcorp or its subsidiaries or affiliates;

    b. influence or attempt to influence any employee of Labcorp or its subsidiaries or affiliates, either directly or indirectly, to terminate his or her employment with Labcorp or any of its subsidiaries or affiliates;

    c. engage in a business that competes with the Business; or

    d. provide information to, solicit or sell for, organize or own any interest in, or become employed by or engaged by, or act as agent for, any person (meaning any individual or corporation, association, partnership, limited liability company, joint venture, joint stock or other company, business trust, trust, organization, governmental authority or other entity of any kind) that is directly or indirectly engaged in a business in Colorado which is substantially similar to or competes with the Business, except for holding (solely as a passive investment) not more than five percent (5%) of the outstanding shares of any publicly held company which may be so engaged in a trade or business substantially similar to or competes with the Business.

Notwithstanding the foregoing, Papaioanu is not prohibited from engaging in the following:

    a. working for a division, entity, or subgroup of a company that engages in the Business so long as such division, entity, or subgroup does not directly or indirectly engage in the Business;

    b. owning, working for, providing services in, contracting with or consulting with a hospital or a health system, including working as a pathologist in a hospital or health system, and is not competitive with Labcorp's business and is not involved in growing the hospital or health system's business;

    c. owning, providing services to, contracting with or consulting with an entity that owns its own laboratory where such laboratory does not provide external services; or

    d. providing COVID PCR/RPP testing outside the Territory.

3. Except as specifically set forth herein, the terms of the Restrictive Covenant Agreements are not modified and are subject to the same time and geographic limitations set forth in the Restrictive Covenant Agreements.

The Court has jurisdiction to enforce this injunction, if necessary.

This __ day of _March_, 2024.

_Terrence Boyle_
Terrence W. Boyle
United States District Court Judge

12

92655635.1

Case 5:22-cv-00437-BO-RN   Document 43   Filed 03/04/24   Page 12 of 12